# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

OXYMED, INC., et al.,  
    Plaintiffs,

Case No. 1:17-cv-349  
Dlott, J.  
Litkovitz, M.J.

vs.

LINCARE, INC.,  
    Defendant.

**REPORT AND RECOMMENDATION**

This matter is before the Court on plaintiff/counterclaim-defendant Richard Wren's motion to dismiss Count III of the amended counterclaim filed by defendant/counterclaimant Lincare, Inc. (Lincare) (Doc. 31), Lincare's response in opposition (Doc. 32), and Wren's reply in support of the motion (Doc. 33).

## I. Background

Oxymed, Inc. (Oxymed) and its shareholders, including Wren, bring this diversity action against Lincare. Oxymed is an Ohio corporation in the business of marketing, advertising, selling, leasing, renting, and distributing oxygen and various medical equipment, medication, products, and services to its customers. (Complaint, Doc. 1, ¶ 1). Lincare is a corporation organized under the laws of the State of Delaware with its principal place of business in Florida. (*Id.*, ¶ 7).

The following allegations by plaintiffs in the complaint are material to Wren's motion to dismiss: On January 7, 2014, Lincare and Oxymed entered into an Asset Purchase Agreement (APA) whereby Lincare agreed to purchase substantially all of Oxymed's assets for the price of $10,500,000, payable in three installments. (*Id.*, ¶¶ 10, 11; Exhibit 1).

Schedule 4.6(e)(i) of the APA lists all equipment and services currently supplied to each active customer of Oxymed as of the APA's closing date and the customer's information, and Schedule 4.6(e)(ii) lists certain customers for whom all appropriate documentation necessary to bill the appropriate payor for specified systems as of the closing date had not yet been obtained or verified as complete. (*Id.*, ¶ 16). Section 4.6(e) warrants that Oxymed was providing a total of at least 1,419 systems to certain customers for which it had appropriate documentation in its possession necessary for billing as of the closing date. (*Id.*). Section 4.6(e) further warrants that within 120 days after the closing, Oxymed would obtain the appropriate documents necessary to bill the appropriate payor for systems in the possession of customers listed on Schedule 4.6(e)(ii) and would verify the documents as complete for billing. (*Id.*). Oxymed claims the APA contemplates that if Oxymed provided Lincare with a minimum of 1,419 customers, then the penalty provision would not apply. (*Id.*, ¶¶ 19, 20).

The APA contains a liquidated damages provision. (*Id.*, ¶¶ 15, 16). It provides that if Oxymed misrepresented any provision of § 4.6(e) or failed or refused to obtain and verify documentation for those customers listed in Schedule 4.6(e)(ii) of the APA, then Lincare was entitled to $5,200 in liquidated damages from Oxymed and its owners for each such misrepresentation or breach. (*Id.*). The right to liquidated damages is in addition to Lincare's other rights under the APA; Oxymed and its owners are jointly and severally for the damages; and Lincare was entitled to deduct the liquidated damages from its payments to Oxymed. (*Id.*, ¶ 16).

On August 29, 2014, Lincare notified Oxymed that it would be deducting $612,900 from the second payment of $1,312,500 under the APA and it would not be making the third payment. (*Id.*, ¶ 12). Lincare paid the balance of the second payment - $690,600 - on January 7, 2015.

2

(*Id.*). On October 13, 2015, Lincare paid Oxymed $1,279,200, which Lincare determined was due after "additional analysis," bringing the total amount Lincare owed Oxymed to $655,200. (*Id.*, ¶ 13). According to Oxymed, it is Lincare's position that this amount allegedly owed under the APA is the amount of liquidated damages related to customers who were not qualified on the closing date or for whom the billings associated with such customers were not complete. (*Id.*, ¶ 14).

Oxymed claims that it did not misrepresent any provision of Schedule 4.6(e). (*Id.*, ¶ 17). Oxymed alleges it fulfilled its obligations under the APA by providing Lincare with 1,532 customers who had in their possession "non-capped, billable and reimbursable rental stationary oxygen systems," together with all appropriate documentation necessary to bill the appropriate payor for each system. (*Id.*, ¶ 18). Oxymed further claims that the parties to the APA agreed that during the 120-day period after the closing, Oxymed would work with Lincare to provide the information and documentation necessary for Lincare to bill the customers listed in Schedule 4.6(e)(ii); however, Lincare breached the APA by obstructing Oxymed's efforts to provide the necessary information for those customers whose information was incomplete. (*Id.*, ¶¶ 21, 22).

Based on these allegations, plaintiffs bring claims against defendants for a declaratory judgment declaring that Lincare owes Oxymed $655,200 plus interests and costs, (2) breach of contract, and (3) unjust enrichment. Lincare brings a counterclaim for breach of contract alleging that plaintiffs/counterclaim-defendants breached the APA by disclosing the agreement and Lincare's proprietary information to third parties (Count I); unjust enrichment, alleging that Oxymed has retained liquidated damages amounts that Lincare was entitled to deduct under the APA (Count II); and breach of contract, alleging that plaintiff/counterclaim-defendant Wren breached a consulting services agreement with Lincare (Consulting Agreement) by failing to

3

provide the requested consulting services (Count III). (Doc. 27).

In support of its claims, defendant-counterclaimant Lincare acknowledges that under § 4.6(e) of the APA, Oxymed and its owners were required to verify and provide the appropriate documentation for certain accounts transferred to Lincare within 120 days of the closing date. (*Id.*, ¶ 18). If they failed to do so, Lincare was entitled to deduct liquidated damages in the amount of $5,200 from Lincare's payments. (*Id.*, ¶ 19). Lincare claims it paid Oxymed and its owners for certain accounts that were received and verified outside of the 120-day period and did not deduct an amount equal to the liquidated damages as allowed under the APA. (*Id.*, ¶ 20).

Lincare alleges it entered into a separate Consulting Agreement with Wren on or about January 6, 2014. (*Id.*, ¶ 21). Under the terms of the Consulting Agreement, Wren was obligated to perform certain consulting services at Lincare's request for the purpose of transitioning Oxymed to Lincare. (*Id.*, ¶ 22). Lincare repeatedly asked Wren to provide such consulting services in several areas, which including working with nursing homes to obtain assignments of customer accounts. (*Id.*, ¶ 23). In at least one instance, Wren failed to provide such consulting services and Lincare lost the account to another provider, which resulted in the loss of 26 billable patients. (*Id.*, ¶ 24). Lincare claims it has been damaged as a result of Wrenn's alleged breach. (*Id.*, ¶ 25).

Plaintiff/counterclaim-defendant Wren moves to dismiss Count III of Lincare's amended counterclaim for breach of contract under Fed. R. Civ. P. 12(b)(6). (Doc. 31). Wren argues that to establish a breach of contract claim under Florida law, which governs the Consulting Agreement, Lincare must prove it was damaged as a result of the claimed breach. Wren contends that if Lincare's allegations are accepted as true, Lincare was not damaged by Wren's failure to provide information necessary to transition the 26 billable customers to Lincare. Wren

4

argues that if he failed to procure the transition of 26 billable customers to Lincare as alleged, then Lincare does not owe Oxymed $5,200 for each of those customers pursuant to the liquidated damages provision of the APA. Thus, Wren argues Lincare sustained no damages as a result of his failure to provide the required consulting services to help Lincare obtain the assignment of 26 customer accounts. In other words, according to Wren, Lincare's damages for any breach of the Consulting Agreement by him cannot possibly exceed $5,200 per lost customer, which is the amount Lincare can recoup from Oxymed under the liquidated damages provision of the APA. Thus, the damages resulting from Wren's alleged breach of the Consulting Agreement are cancelled out by the terms of the APA and total $0.

In response, Lincare argues that Wren's analysis of its damages claim is flawed. (Doc. 32). Lincare contends that if it were to prevail on its counterclaim against Oxymed for unjust enrichment based on allegations that Oxymed has retained liquidated damages amounts that Lincare was entitled to deduct from its payments under the APA, Lincare would still have claims for additional damages against Wren under the Consulting Agreement. Lincare asserts that Wren's obligations under the Consulting Agreement went beyond assisting with the transfer of the 26 customers specifically mentioned in the counterclaim. Rather, the loss of these customers is just one example of Wren's breach of his obligations. Lincare also argues that the loss of revenue from these 26 customer accounts, and the termination of the relationship with this particular nursing home, caused damages that exceed the liquidated damages offset.

In its reply, Wren focuses on Lincare's allegations in the amended counterclaim that Wren breached the Consulting Agreement when he failed to obtain the assignment of customer accounts, and that the breach caused the loss of a 26-billable patient account. Wren contends that under Lincare's theory of its case, the possible damages for Wren's alleged breach are

5

limited to the loss of those customers that Wren did not help transition to Lincare. Wren argues that because Lincare offset these losses by deducting liquidated damages from its payments under the APA, Lincare suffered no damages as a result of Wren's alleged breach.

**II. The motion to dismiss should be denied.**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Wren argues that Lincare has not stated a claim for breach of contract under Florida law, which Lincare does not dispute governs the Consulting Agreement. Under Florida law, to establish a breach of contract a party must show that (1) there was a contract, (2) the defendant breached the contract, and (3) the plaintiff suffered damages as a result of the breach. *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla. 2nd DCA 2006). *See also Resnick v. AvMed, Inc.,* 693

6

F.3d 1317, 1325 (11th Cir. 2012) (a breach of contract claim requires a party to show damages resulting from the breach).

Lincare's counterclaim allegations state a plausible claim for breach of contract against Wren under Florida law. Lincare has satisfied the first element by alleging the parties entered into a contract under which Wren agreed to provide consulting services in connection with the APA. (*Id.*, ¶ 23). Lincare's allegations that Wren breached the Consulting Agreement by failing to provide required consulting services satisfy the second element. (*Id.*, ¶ 24). Third, Lincare alleges it was damaged as a result of Wren's failure to provide consulting services as required under the contract. (*Id.*, ¶ 25). Lincare specifically alleges it lost an account with 26 billable patients to another provider as the result of Wren's breach. (*Id.*, ¶ 24).

Wren denies that Lincare alleges any damages resulting from his alleged breach. Wren construes Lincare's allegations to mean that the only consequence of his alleged breach was Lincare's inability to transition 26 billable patients. This is not a fair reading of the amended counterclaim. Lincare does specifically allege in its counterclaim that it suffered damages as a result of Wren's failure to provide consulting services on "*at least* one occasion" in connection with working with nursing homes to obtain assignments of customer accounts, resulting in the loss of a 26-patient account. (*Id.*, ¶¶ 23, 24) (emphasis added). However, Lincare's allegations do not suggest that Wren's only breach involved his failure to provide consulting services in connection with these 26 patients that Lincare was unable to transition. Rather, Lincare alleges that it retained Wren to provide numerous types of consulting services. Thus, Lincare may be able to recover damages for additional losses resulting from Wren's alleged failure to provide other consulting services as required under the Consulting Agreement.

Moreover, even assuming Lincare's damages resulting from Wren's alleged breach are limited to the loss of the 26 billable customers, Wren has not shown that Lincare's damages cannot plausibly exceed the liquidated damages offset of $5,200 per customer available to Lincare under the APA. First, it is not clear at this juncture whether the liquidated damages offset even applies. Plaintiffs allege in the complaint that it is contemplated under the APA that if Oxymed provided a minimum of 1,419 customers with the necessary billing information to Lincare, then the penalty provision does not apply. (Doc. 1, ¶¶ 19, 20). Further factual development is therefore necessary before a determination can be made as to whether Lincare is entitled to the liquidated damages offset. Assuming the liquidated damages provision of the APA applies and that Lincare is entitled to an offset for each of the 26 patients it was unable to transition as a result of Wren's alleged breach of the Consulting Agreement, it is not apparent from the pleadings that Lincare sustained no additional damages as a result of the loss of these patients.

For these reasons, Lincare has sufficiently pled that it was damaged as a result of Wren's alleged breach of the Consulting Agreement. Lincare has stated a plausible claim for breach of contract in Count III of its amended counterclaim. The counterclaim for breach of contract against Wren should not be dismissed.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff/counterclaim-defendant Wren's motion to dismiss Count III of Lincare's amended counterclaim (Doc. 31) be **DENIED**.

Date: 8/31/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OXYMED, INC., et al.,
Plaintiffs,

Case No. 1:17-cv-349
Dlott, J.
Litkovitz, M.J.

vs.

LINCARE, INC.,
Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).